**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MARLYN L. ANCHUNDIA, as Administratix
of the Estate of ELIAS JOSEPH ANCHUNDIA,
Deceased, and MARLYN L. ANCHUNDIA,
Individually

                                      Plaintiffs,               **MEMORANDUM
                                                                              AND ORDER**

             - against -
                                                                                 CV 07-4446 (AKT)

NORTHEAST UTILITIES SERVICE
COMPANY, and THE CONNECTICUT
LIGHT AND POWER COMPANY,

                                    Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

       Plaintiff Marlyn L. Anchundia, as administratix of the estate of Elias Joseph Anchundia, and individually (referred to collectively as "Plaintiffs"), filed an Amended Complaint in this action adding a claim for strict liability and negligence per se (Count Four). Count Four of the Amended Complaint alleges that Northeast Utilities Service Company and The Connecticut Light and Power Company ("Defendants") should be held strictly liable for the injury, pain and suffering and death of Elias Joseph Anchundia (the "Decedent"). Defendants have moved to dismiss Count Four of the Amended Complaint, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties in this action have consented to my jurisdiction for all purposes. *See* DE 36. For the reasons set forth below, the motion to dismiss Count Four of the Amended Complaint is GRANTED.

## I. ALLEGATIONS SET FORTH IN THE COMPLAINT[1]

In the Amended Complaint, Plaintiff asserts claims for personal injury and wrongful death (Count 1), wrongful death (Count 2), Loss of Services (Count 3), and Strict Liability and Negligence per se (Count 4). Am. Comp. ¶¶ 15-62. Each of these claims arises out of an accident which occurred on February 21, 2007, when the Decedent was fatally injured while on the job. *Id.,* ¶ 24.

According to the Amended Complaint, American Electrical Testing Company, the Decedent's employer, entered into a contract with Defendants "to perform certain electrical inspecting, testing, maintenance and repair, inclusive of underground submersible transformer vault and its components, including a high voltage primary switch compartment and network protector (the "Electric Project"), located at . . . the intersection of East Main Street and Phoenix Avenue, Waterbury Connecticut." *Id.*, ¶ 16. Plaintiff alleges that Defendants directed the work, supervised the work, controlled and/or managed the work and had a presence on the job site at all relevant times. *Id.,* ¶¶ 25 - 28.

On February 21, 2007, the Decedent sustained fatal injuries when an explosion occurred while he was working in an underground electrical transformer vault. *Id.*, ¶ 24. The Decedent was performing maintenance in the vault, including sampling of fluid from an energized, high voltage primary switch compartment, and switching or splicing activities. *Id.,* ¶ 59. Defendants, in their motion to dismiss, explain that the vault and the electrical equipment inside it are part of Connecticut Light and Power Company's underground electrical distribution network that serves

---

[1] For purposes of a motion to dismiss, the court must accept the allegations in the complaint as true. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006).

downtown Waterbury. According to Plaintiffs, the work conditions in the electric vault were ultrahazardous and a standard of strict liability should apply. *Id.*, ¶¶ 58-60. Additionally, Plaintiffs allege that Defendants "violated applicable laws of the State of Connecticut, as well as the Occupational Safety and Health Administration Regulations, the Industrial Code, the Code Ordinances for the City of Waterbury, Connecticut, and the applicable codes, ordinances, rules and regulations of other local municipalities that may apply." *Id.,* ¶ 56. Plaintiffs allege that the violation of these statutes gives rise to a claim of negligence per se.

## II.   DISCUSSION

### A.   *Standard Of Review*

A court may grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) only when "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003) (internal quotations and citations omitted). Under the two most recent pronouncements by the United States Supreme Court, namely *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Court must consider two requirements when adjudicating a motion to dismiss. "First, although the Court must still accept factual allegations as true, it should not credit 'mere conclusory statements' or 'threadbare recitals of the elements of a cause of action.'" *Stephenson v. Citco Group Ltd.,* No. 09 CV 00716, 2010 WL 1244007, at *16 (S.D.N.Y. Apr. 1, 2010) (quoting *Iqbal*, 129 S.Ct. at 1949). A plaintiff's burden to set forth the grounds of his "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.; see Arar v. Ashcroft,* 585 F.3d 559 (2d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. *See also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *Austen v. Catterton Partners V, LP.,* No. 3:09 CV 1257, 2010 WL 625389, at *2 (D. Conn. Feb. 17, 2010).

B. *Strict Liability*

This Court's jurisdiction is premised on diversity and since the incident giving rise to this action occurred in Connecticut, the substantive law of that state governs. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) ; *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 116 n. 4 (2d Cir. 2002). The parties do not dispute that Connecticut law applies. Pursuant to Connecticut law,

> [u]nder the doctrine of absolute or strict liability for an ultrahazardous activity, "a plaintiff is not required to show that his loss was caused by the defendant's negligence. It is sufficient to show only that the defendant engaged in an ultrahazardous activity that caused the defendant's loss. The doctrine has traditionally been applied in cases involving blasting and explosives . . . Connecticut's sole extension beyond blasting cases is to damage from a concussion resulting from pile driving"

*Liss v. Milford Partners, Inc.*, No. X07CV044025123S, 2008 WL 4635981, at *4 (Conn. Super. Sept. 29, 2008) (quoting *Green v. Ensign-Bickford Co.*, 595 A.2d 1383 (Conn. App.), *cert. denied*, 597 A.2d 341 (Conn. 1991)); *see also Curtis v. Northeast Utilities*, No. CV 92-05511572-5, 1994 WL 702690, at *1(Conn. Super. Dec. 5, 1994).

"The courts in Connecticut and other jurisdictions which recognize the doctrine of strict liability for dangerous activities, impose it only in narrow circumstances." *Levenstein v. Yale*

4

*University*, 482 A.2d 724, 726 (Conn. Super. 1984). "Traditionally, strict liability for ultrahazardous activity has been applied solely in the context of blasting and explosives; . . . and was later extended to pile driving; . . . and research experiments involving highly volatile chemicals." *Heaslip v. Mota's Sewer Service, LLC*, No. 5002500, 2007 WL 3121763, at *2 (Conn. Super. Oct. 15, 2007) (citation omitted).

Sections 519 and 520 of 3 Restatement (Second), Torts, address the doctrine of strict liability for ultrahazardous activities.

> Section 519 provides in pertinent part: (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> Comment (d) of the Restatement points out that the liability of §519 is not based on any intent of the defendant to do harm to the plaintiff, rather, it arises out of the abnormal danger of the activity itself, and the risk that it creates of harm to those in the vicinity. It is founded upon a policy of law that imposes upon anyone who for his own purposes creates an abnormal risk of harm to his neighbors, the responsibility of relieving against the harm when it does in fact occur.

*Liss v. Milford Partners, Inc.*, 2008 WL 4635981 at * 4

The parties agree that it is a question of law for the Court to decide whether any activity is "ultrahazardous." *Martin v. Shell Oil Co.*, 180 F. Supp. 2d 313, 325 (D. Conn. 2002). Connecticut courts consider the following factors in determining whether an activity is ultrahazardous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; © inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to

5

the community is outweighed by its dangerous attributes.

*Martin*, 180 F. Supp. 2d at 325 (citing *Green v. Ensign-Bickford Co.*, 595 A.2d 1383 (Conn. App. 1991)). "Not all the factors need to be present, especially if some weigh heavily in the balance, but at least several should exist." *Id*.

Courts in Connecticut have held that electric companies may not be held strictly liable in a variety of circumstances. *See, e.g., Curtis v. Northeast Utilities*, No. CV 92-0511572-s, 1994 WL 702690, at * 4 (Conn. Super. Dec. 5, 1994) ("it strains credibility to hold a utility company strictly liable unless negligence is involved. The generation or transmission or supply of electricity touches all of us in our lives. We as citizens have overwhelmingly concluded that strict regulation of our public utilities is a necessary and prudent way to balance our insatiable use of electricity"); *Rivera v. Connecticut Light & Power*, No. 314570, 1993 WL 256393, at * 2 (Conn. Super. July 1, 1993) (strict liability cannot be imposed based on inherently dangerous or ultrahazardous activity relative to the transmission of electric current as alleged in this case"); *Klotz v. Connecticut Light and Power Co.,* No 0041767, J.D. Fairfield (Conn. Super. Nov. 9, 1979) (claim of strict liability dismissed where ladder came in contact with power lines "[t]he degree of care required is a very high one, but does not rise to a level where liability is absolute and can be imposed without some negligent act or omission"). Plaintiffs contend that these cases are all distinguishable because "none of the cases cited by the defendant involve an employee of a electric utility or an employee of a utility's contractor who was required by his job duties to work on and around energized transformers located in underground vaults." Pl. Mem. at 6.

*Heaslip v. Mota's Sewer Service, LLC*, No. 5002500, 2007 WL 3121763 at * 4 (Conn. Super. Oct. 15, 2007) is directly on point here and Plaintiffs do not and cannot distinguish it. In

*Heaslip,* the court granted defendant's motion to strike Plaintiffs' claim of strict liability because, *inter alia*, the Plaintiff was employed as a blaster and thus clearly a participant in the ultrahazardous activity. The court in *Heaslip* ruled that

> [t]he rule of strict liability for engaging in ultrahazardous activities does not apply where the person harmed has reason to know of the risk that makes the activity ultrahazardous and takes part in it or brings himself within the area which will be endangered by its miscarriage . . . In other words, the benefit of strict liability does not run to a person participating in the activity deemed to be ultrahazardous

*Id.* at 2007 WL 3121763, at *4. Here, the Amended Complaint alleges that "in light of the work contracted for by defendants and being performed by the plaintiff's decedent in accordance with a contract with American Electrical, as well as the location of same, and the resulting potential for electrocution and/or explosion and/or fire and/or other dangers and hazards, the plaintiff's decedent's activities were abnormally and/or intrinsically dangerous and it can be fairly said that the defendants and/or plaintiff's decedent were engaged in an ultrahazardous activity or activities." Am. Compl. ¶ 58. Additionally, as quoted above, Plaintiffs' memorandum acknowledges that the Decedent was hired to engage in the allegedly ultrahazardous activity. Because Plaintiffs readily acknowledge that the Decedent was engaged in the purportedly ultrahazardous activity, I need not decide whether the provision of electricity is properly considered ultrahazardous in this situation because Plaintiffs' claim must nevertheless be dismissed. Either the provision of electricity is not ultrahazardous, or, if it was, the Decedent knowingly engaged in the ultrahazardous activity. Accordingly, Plaintiffs' claim of strict liability must be dismissed, with prejudice.

### C. *Negligence Per Se*

Under Connecticut law, negligence per se is a separate cause of action from negligence and enables plaintiffs to establish as a matter of law that the defendant's conduct constituted a breach of duty, so that only causation and damages need be proved. *See Law v. Camp*, 116 F. Supp. 2d 295, 303 (Conn. 2000); *see also In re TMI*, 67 F.3d 1103, 1118 (3d Cir. 1995) ("[W]here defendants violated the relevant statute or regulation, courts have held as a matter of law that plaintiffs have satisfied the first two elements of their cause of action: the duty and breach of duty."); *Stanton by Brooks v. Astra Pharmaceutical Products, Inc.*, 718 F.2d 533,564 n. 22 (3d Cir. 1983) (noting, in the FDCA context, that "Pennsylvania law views a statutory violation as conclusive evidence of negligence, in the absence of an excuse for that violation . . .. We emphasize, however, that the nomenclature 'negligence per se' does not mean that a plaintiff seeking to recover under that doctrine may dispense with establishing proximate cause."); *see generally* 1 J.D. Lee & Barry A. Lindahl, Modern Tort Law: Liability & Litigation § 3.33, at 102 (1980) ("Under the per se rule, the violation of an applicable statute is conclusive proof of negligence, leaving only the question of causation to be determined.") (citation omitted).

"There are two necessary elements to a claim of negligence per se. First, the plaintiff must be in the class of persons for whose benefit the statute was enacted." *Law v. Camp*, 116 F. Supp. 2d at 303; *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 514 F. Supp. 2d 328, 335 (D. Conn. 2007) ("requirement that negligence per se actions be based on a clear statutory standard of behavior aimed at individuals"); *Hassett v. Palmer*, 12 A.2d 646 (Conn. 1940) (the inquiry is whether the defendants were guilty of a breach of duty in failing to provide safeguards to prevent the injuries suffered by the plaintiff). "Second, the plaintiff must prove that the violation of the

statute, that is, the breach of duty imposed by the statute, was a proximate cause of the injury."
*Law,* 116 F. Supp. 2d at 303 (citing *Rivera v. Fairbank Management Prop., Inc.,* 703 A.2d 808
(Conn. 1997); *Martin,* 180 F. Supp. at 324 ("A cause of action for negligence *per se* requires, in
addition to typical negligence elements, that the defendant violate a statute, that the plaintiff be
part of the class sought to be protected by that statute, and that the injury suffered by the plaintiff
be of the type the statute was created to prevent").

Where plaintiff fails to identify the statute upon which the claim is based, it is impossible to determine if the plaintiff was in a class sought to be protected by the statute or whether the injury suffered by the plaintiff was the type of injury the statute was designed to prevent. It is also impossible to assess whether the defendant breached a duty imposed by statute. Defendants here rely on *In re September 11 Property Damage*, 468 F. Supp. 2d 508 (S.D.N.Y. 2006) in support of their position that Plaintiffs' claim must be dismissed because Plaintiffs have not identified the statute upon which their negligence per se claim is based. Def. Mem. at 11. Plaintiffs have not provided any authority to the contrary, but simply dismiss the *September 11* case because it is based upon New York law. After careful consideration of the cases cited above, and notwithstanding the absence of direct authority from Connecticut state courts, the Court is persuaded that Plaintiffs are not entitled to pursue a claim of negligence per se where a specific statute has not been identified. Accordingly, Plaintiffs' negligence per se claim must be dismissed. Plaintiffs shall be permitted to replead this claim, if possible, within ten days from the date of this Order if they can remedy this defect.

  **D.**  ***Failure To Satisfy Rule 10(b)***

According to Defendants, Count Four of the Amended Complaint must be dismissed

because it asserts two separate theories of liability. It is unnecessary for me to reach this procedural issue because, as discussed above, both of Plaintiffs' newly asserted theories of liability fail to state a claim and are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## V. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss Count Four of the Amended Complaint is GRANTED. Plaintiffs are given leave to replead the negligence per se claim pursuant to the guidance stated above. Any such amended pleading shall be filed with ten (10) days from the date of this Order.

Counsel for the parties are directed to participate in a telephone conference with the Court on June 28, 2010 at 11:00 a.m. Plaintiffs' counsel is requested to initiate the call to Chambers.

**SO ORDERED.**

Dated: Central Islip, New York
March 31, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge